## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **SHANNON ROLLINS-ALLEN,** | ) | |
| **Individually and as Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **Christopher Allen,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:21-cv-00343-JDL** |
| | ) | |
| **NORTHERN CLEARING, INC. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Shannon Rollins-Allen filed this matter in her individual capacity, and in her capacity as the personal representative of the Estate of Christopher Allen, against Defendants Northern Clearing, Inc. ("Northern Clearing") and Curtis W. Stephens. The action arises out of a fatal collision in which Defendant Stephens, driving his commercial box truck, collided head-on with Rollins-Allen's vehicle, resulting in the death of Christopher Allen and causing severe injuries to Shannon Rollins-Allen. At the time of the collision, Stephens was employed by Northern Clearing. Rollins-Allen's Amended Complaint (ECF No. 10) asserts a wrongful death claim (Count I); a survival claim for pre-death conscious suffering (Count II); and a negligence claim (Count III).

Northern Clearing now moves for summary judgment (ECF No. 36), contending that there is no genuine dispute of material fact that Stephens was not acting within the scope of his employment, so Northern Clearing cannot be

vicariously liable for his alleged negligence.  For the reasons that follow, I deny the motion.

## I.  FACTUAL BACKGROUND

On or about September 10, 2021, Stephens lost control of the box truck that he was driving, crossed into oncoming traffic, and collided head-on with a car driven by Christopher Allen.[1]  Allen died as a result of the injuries he sustained in the accident, and his wife, Shannon Rollins-Allen, was seriously injured.

Stephens is an experienced diesel equipment mechanic, and Northern Clearing employed Stephens as an "operator mechanic" at the time of the crash.  ECF No. 36-1 at 2, ¶ 7.  Northern Clearing is a company based in Wisconsin that Central Maine Power Company ("CMP") hired as a contractor to work on the CMP power-line corridor.  Stephens was responsible for repairing equipment on-location at the CMP right-of-way site where Northern Clearing crews were clearing the power-line corridor.  The location of the right-of-way clearing site changed regularly—sometimes daily—as the crews made progress.

At the time of the accident, Stephens was driving his 30,000-pound box truck, which he also describes as his "service rig" and a "rolling toolbox with a crane."  ECF No. 36-1 at 2, ¶¶ 15, 16.  Stephens's position as an operator mechanic required him to use his truck on-site at the right-of-way work locations.  The truck was equipped with the tools and equipment necessary for Stephens to perform his job, including a

---

[1]  The Amended Complaint alleges that the collision occurred "at approximately 5:42 [p.m.]," ECF No. 10 at 3, ¶ 15, while the summary judgment record indicates that the collision occurred at 5:42 a.m. when Stephens was on his way to the Farmington yard, *see* ECF No. 40 at 1, ¶¶ 1, 2; ECF No. 44 at 8, ¶ 23.  Accordingly, I deem admitted that the collision occurred at 5:42 a.m., contrary to the initial pleading.

welding machine and a crane. Operator mechanics like Stephens were the only Northern Clearing crew members required to use their own vehicles for work purposes.

Stephens owned the truck and entered into a written Rig Rental and Insurance Agreement ("the Agreement") with Northern Clearing. This type of agreement is a union requirement for mechanics who use their own trucks and equipment on job-sites like the right-of-way. Northern Clearing required Stephens to maintain active insurance for the truck and perform proper maintenance. Stephens was also required to maintain an active Commercial Driver's License as part of his employment with Northern Clearing.

Northern Clearing paid Stephens an hourly wage for his work as an operator mechanic. Northern Clearing also paid Stephens $18 per hour as a rental fee for the truck pursuant to the Agreement, and the truck's rental hours matched the hours that Stephens "clocked" in and out each day for which he was paid his hourly wages. The Agreement stated that: "The hourly rental rate to be paid by Northern Clearing for the use of Employee's rig begins at the assembly point and ends on the work site/right-of-way and such rental pay will only apply to [] working Time on the Job." ECF No. 36-1 at 3, ¶ 30. As Rollins-Allen asserts, pursuant to the Agreement, "Stephens's truck was required to be at the Farmington yard at the start of the workday; accordingly, Stephens needed to deliver the truck to Northern Clearing in

Farmington sometime at or before the start of work each morning."[2]  ECF No. 44 at 8, ¶ 28.

Northern Clearing did not pay wages or rig rental fees to Stephens for time he spent commuting to and from work.  Northern Clearing did not have any input in how Stephens used his truck on his own time.

Northern Clearing provided fuel for the service trucks at the Farmington yard and provided employees like Stephens with a fuel card.  Stephens would "typically" top-off his truck's fuel tank at the Farmington yard every day, ECF No. 40 at 4, ¶ 25, and he was not required to reimburse Northern Clearing for the fuel that he used outside of work hours.

At the time of the crash, Stephens was on his way to the Farmington yard for the mandatory daily check-in.  Stephens was driving his truck at that time, "in part, because he needed to get himself to work, and in part, [] because he was required by Northern Clearing to deliver his service truck at the Farmington yard by the beginning of the workday."[3]  ECF No. 44 at 8, ¶ 23.

For about one week, when the crew to which Stephens was assigned was first transferred to the Farmington yard location, Northern Clearing, "as a courtesy," ECF No. 40 at 5, ¶ 31, permitted Stephens to report directly to the right-of-way while he

---

[2]  Northern Clearing's qualification is non-responsive to the facts asserted by Rollins-Allen here and merely cites the language of the Agreement.  Accordingly, this fact is deemed admitted.  *See* D. Me. Local R. 56(d), 56(f).

[3]  Northern Clearing's qualification lacks proper record support, is argumentative as to the characterization of the word "deliver," and does not dispute the asserted facts.  Because Northern Clearing failed to comply with the strictures of Local Rule 56(d) and (f) in its response, Rollins-Allen's asserted statement of fact is deemed admitted.  *See* D. Me. Local R. 56(d), 56(f).

was looking for a place to live that was closer to that location. At all other times, Stephens either drove his personal vehicle to the Farmington yard and picked up his truck there, or he drove to the Farmington yard in the truck. His decision whether to drive the truck depended on the job-site's location relative to his home. If Stephens drove his truck home at the end of the day, "he was required to bring it to the Farmington yard the following morning, as it was mandatory that the entire crew meet at the yard before going to the right of way."[4]  ECF No. 44 at 8, ¶ 29.  On the day before the collision, Stephens drove home in his truck rather than in his personal vehicle because the right-of-way work site was closer to his home than to the Farmington yard.

## II.  LEGAL ANALYSIS

### A.   Legal Standard

Summary judgment is appropriate when the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000) ("A party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.").  "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'"  *Feliciano-Muñoz v.*

---

[4]  Northern Clearing's qualification lacks proper citation to the record as required by Local Rule 56(d) and (f) and does not otherwise "qualify" the asserted facts.  This statement of fact is accordingly deemed admitted. *See* D. Me. Local R. 56(d), 56(f).

*Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (quoting *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 (1st Cir. 2016)); *see also Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) ("'[G]enuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995))).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If a nonmovant would bear the burden of proof at trial as to any essential factual element of a claim, "its failure to come forward with sufficient evidence to generate a trial[-]worthy issue warrants summary judgment for the moving party." *In re Ralar Distribs., Inc.*, 4 F.3d 62, 67 (1st Cir. 1993).  The facts in the record are construed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in favor of the nonmoving party. *See Braga v. Genlyte Grp., Inc.*, 420 F.3d 35, 38 (1st Cir. 2005).

"[W]hether an employee is acting within the scope of employment may be a question of fact or law depending on the evidence presented in a particular case." *Canney v. Strathglass Holdings, LLC*, 2017 ME 64, ¶ 11, 159 A.3d 330.  When there is no genuine dispute of material fact, the Court may determine, as a question of law, whether an employee was acting within the scope of his employment. *Id.*

**B.      Employer Vicarious Liability**

Because I am exercising diversity jurisdiction, I apply substantive Maine law to determine whether Stephens was acting within the scope of his employment. *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 349 (1st Cir. 2018).  As evidenced by the parties' legal memoranda, there is some uncertainty as to the current state of the controlling legal principles.

Rollins-Allen contends that the controlling Maine decision on the issue of Northern Clearing's vicarious liability for Stephens's alleged negligence is *Spencer v. V.I.P., Inc.*, 2006 ME 120, 910 A.2d 366, in which the Law Court applied the Restatement (Second) of Agency.  In *Spencer*, an hourly employee volunteered to help set up a promotional event sponsored by his employer at a racetrack in exchange for $25 cash and a shirt.  *Spencer*, 2006 Me 120, ¶ 2, 910 A.2d 366.  The $25 "was intended to cover any expenses, including gas."  *Id.* at ¶ 7.  While driving home after completing the set-up work, the employee collided with an oncoming car, killing one of the passengers and injuring two others.  *Id.* at ¶¶ 2-3.  The Law Court looked to the Restatement (Second) of Agency in its analysis:  "[A]n employee's action occurs within the scope of employment if '(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master.'"  *Id.* at ¶ 6 (alteration in original) (quoting Restatement (Second) of Agency, § 228(1) (Am. L. Inst. 1958)).

Applying this test, the Law Court first determined that there was a genuine issue of material fact about whether the employee's travel "was part of a task [that he] was employed to perform" because there was testimony suggesting that (1) the

7

$25 was intended to cover expenses, including gas, and (2) the $25 was intended, at least in part, to constitute compensation.  *Id.* at ¶ 7.  Second, the Law Court concluded that the record evidence supported a finding that the employee's travel occurred "substantially within the authorized time and space limits" of his employment because the travel "occurred at the time reasonably expected—i.e., immediately before and after" the volunteer shift.  *Id.* at ¶ 8.  Finally, the Law Court concluded that "[i]nasmuch as it was necessary in order to perform the set-up work, the travel might be found to have been actuated by a purpose to serve V.I.P.," and accordingly vacated the Superior Court's award of summary judgment in favor of the employer.  *Id.* at ¶ 9.

Northern Clearing contends that the *Spencer* decision has been implicitly overruled by subsequent Law Court decisions and is no longer controlling authority on the issue of vicarious liability for employers under Maine law.  Instead, Northern Clearing argues, vicarious liability is determined in accordance with the criteria set forth in the Restatement (Third) of Agency, sections 7.07 and 7.08, to which the Law Court has cited in two more recent decisions.  *See Picher v. Roman Cath. Bishop of Portland*, 2009 ME 67, 974 A.2d 286; *Canney*, 2017 ME 64, 159 A.3d 330.

Northern Clearing offers no authority suggesting that the Law Court has overruled the *Spencer* opinion and, for reasons I will explain, I am not persuaded that the absence of reliance on *Spencer* in *Picher* and *Canney* indicates that the Law Court intended to implicitly overrule *Spencer*.

In *Picher*, the Law Court discussed vicarious liability for an employer's fraudulent concealment of an employee's propensity for sexual misconduct. 2009 ME 67, ¶¶ 31, 32, 974 A.2d 286. In *Canney*, the Law Court addressed the specific issue of whether an on-call employee of a property company acted in the scope of employment when a tenant visited the employee's home for recreational purposes. 2017 ME 64, ¶¶ 5, 11-14, 159 A.3d 330. *Canney* cited authority relevant to those factual circumstances, and specifically to *Picher* as a recent vicarious liability decision referencing the Third Restatement.

Moreover, in *Picher*, it appears that the Law Court did not intend to reject the Second Restatement. Instead, the Law Court noted that it had previously looked to the Second Restatement "for guidance on issues pertaining to employer vicarious liability," and that the Third Restatement, section 7.08, is a relevant "counterpart" to the Second Restatement, section 219(2)(d), that applies to vicarious liability in the employment context. *Picher*, 2009 ME 67, ¶ 32, 974 A.2d 286 ("We express no opinion as to the applicability of either section 7.07 or section 7.08 of the [Third Restatement] to the facts of this case, except to say that on remand, *the court may look* to these sections to provide the appropriate framework for analyzing the vicarious liability issues raised in this case." (emphasis added)). Thus, the more recently published Third Restatement, while a useful counterpart to determine vicarious liability issues, does not preclude reference to and reliance on the Second Restatement.

In any event, I need not resolve whether *Spencer* or the Third Restatement is controlling at this stage because under either analysis, Northern Clearing has failed

to meet its burden of showing that it is entitled to judgment as a matter of law.  This is because there is a trial-worthy issue as to whether Stephens was acting within the scope of his employment at the time of the collision.  Accordingly, Northern Clearing is not entitled to summary judgment.

### 1.  Whether Stephens was acting within the scope of his employment under the *Spencer* criteria

The Second Restatement criteria set forth in *Spencer* for determining whether an employee has acted within the scope of her or his employment provides:  "[A]n employee's action occurs within the scope of employment if '(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master.'"  *Spencer*, 2006 ME 120, ¶ 6, 910 A.2d 366 (alteration in original) (quoting Restatement (Second) of Agency, § 228(1) (Am. L. Inst. 1958)).

Northern Clearing argues that the facts in *Spencer* are fundamentally different from the circumstances here because in *Spencer* the employee was driving home after working as an unpaid volunteer at an employer-sponsored event, and that his driving necessarily resulted from the employee conferring a benefit on his employer, rather than "fulfilling his own responsibility of getting himself to work."  ECF No. 41 at 5.  Here, Northern Clearing paints Stephens as having been hired as an operator mechanic to repair equipment on the right-of-way—and not to drive or commute to Northern Clearing's Farmington yard.  Northern Clearing summarily asserts that the remaining *Spencer* criteria cannot be satisfied.

Rollins-Allen responds that, at the time of the crash, Stephens was driving his truck to the Farmington yard and then to the job-site, an activity required by his employment terms and "of the kind he [was] employed to perform" on a daily basis. *Spencer*, 2006 ME 120, ¶ 6, 910 A.2d 366.   Rollins-Allen asserts that, unlike the noncommercial driver in *Spencer*, Stephens was required to maintain a Commercial Driver's License because "*part of his job* was to serve as a commercial truck driver to transport the service truck to the job site each day."  ECF No. 39 at 10 (emphasis in original).   Rollins-Allen also argues that the crash occurred "within the time and location Northern Clearing 'reasonably expected' Stephens to be driving" to the Farmington yard to report for his job.  ECF No. 39 at 11 (quoting *Spencer*, 2006 ME 120, ¶ 8, 910 A.2d 366).   Finally, according to Rollins-Allen, Stephens's actions were "actuated, at least in part, by a purpose to serve" Northern Clearing because he was transporting the truck to the Farmington yard as required, ECF No. 39 at 11 (quoting *Spencer*, 2006 ME 120, ¶ 6, 910 A.2d 366), and the truck carried tools and equipment that were "critical" for Northern Clearing to conduct its operations.  ECF No. 44 at 3, ¶¶ 14, 17.

### (a)  Whether Stephens was performing an activity of the kind he was employed to perform

Based on the summary judgment record, a reasonable jury could conclude that at the time of the crash, Stephens was performing an activity of the kind he was employed to perform.  Under *Spencer*, an activity need not be the primary duty of an employee, it need only be an activity of the kind that the employee was employed to perform.  As a condition of Stephens's employment as an operator mechanic, he was

required to maintain a Commercial Driver's License in order to drive the truck. Part and parcel to the requirement that Stephens use his own truck as a condition of employment, he was also required to maintain it in working condition, drive it to the right-of-way job-site, and refuel it—either at the Farmington yard or some other location. Thus, a reasonable jury could find that Stephens was hired not only because he was a qualified operator mechanic who could repair Northern Clearing's machinery, but also because he owned a truck with a crane and held a Commercial Driver's License to drive the truck.

Although Stephens was not paid an hourly wage or rig rental fee for the time spent transporting the truck to the Farmington yard or for the time spent transporting the truck after he clocked out of work at the job-site, the absence of payment for those periods is not dispositive of whether Stephens was acting within the scope of employment at the time of the crash. Stephens was paid an hourly wage and rig rental fee to drive the truck between the Farmington yard and the right-of-way job-site. In addition, operator mechanics such as Stephens could also choose to refuel their trucks at the Farmington yard, and fuel was necessary to perform work at the right-of-way. It may be inferred that this arrangement recognized that it was within the scope of Stephens's job responsibilities to drive the truck not only between the Farmington yard and the job-site, but also to the Farmington yard at the start of each workday. Thus, a reasonable jury might conclude that at the time of the accident, Stephens was engaged in an activity of the kind that he was employed to perform.

###### (b)  Whether the collision occurred "substantially within the authorized time and space limits" of Stephens's employment

Based on the summary judgment record, a reasonable jury could also conclude that the collision occurred within the authorized time and space limits of Stephens's employment.  The "authorized time and space limits" criterion "relates to whether the agent's act was foreseeable, and establishes the principle that 'the master should not be held responsible for the agent's conduct when that conduct is outside the contours of the employment relationship.'"  *Mahar v. StoneWood Transp.*, 2003 ME 63, ¶ 15, 823 A.2d 540 (quoting *Nichols v. Land Transp. Corp.*, 103 F. Supp. 2d 25, 27 (D. Me. 1999)); *see, e.g.*, *Nichols*, 103 F. Supp. 2d at 27 (finding that the "time and space limits" requirement was not satisfied because the employee committed an intentional tort "outside the physical space in which he was authorized to be as an agent for [his employer]" and by leaving the authorized space "it [was] clear he was motivated to serve his personal interests, rather than those of [his employer]").

Here, the crash occurred while Stephens was transporting his truck to attend a mandatory check-in meeting, roughly fifteen minutes prior to the designated reporting time at the Farmington yard, en route from his home directly to the yard. This is similar to the situation considered in *Spencer*, where the Law Court concluded that the record could support a finding that the accident occurred within the time and space limits of employment, "i.e., immediately before and after [the employee] completed his set-up work." *Spencer*, 2006 ME 120, ¶ 8, 910 A.2d 366.

Furthermore, Stephens was not on a break and there is no suggestion that he was engaged in a personal errand unrelated to his job duties. *See, e.g.*, *Morera v. Sears, Roebuck & Co.*, 141 F. Supp. 3d 1335, 1338-39 (S.D. Fla. 2015), *aff'd*, 652 F. App'x 799 (11th Cir. 2016) ("The act of eating breakfast and listening to the radio in his personal vehicle while on a personal break approximately one-half mile away from [his place of employment] . . . did not occur within the time and space limits authorized or required by the work to be performed"); *George v. Lowe*, No. 14-30088-KAR, 2016 WL 6514139, at *3 (D. Mass. Jan. 11, 2016) (concluding that the employee's driving was not within the time and space limits of employment because the accident occurred during a personal "weekend excursion" where the employee was not expected to perform any work). Accordingly, it may be reasonably inferred that Stephens was acting within the foreseeable time and space limits of his employment at the time of the crash.

### (c) Whether Stephens's activity was actuated, at least in part, to serve a purpose to Northern Clearing

There are three critical, undisputed facts that, if credited by a jury, could lead to a finding that Stephens was actuated, at least in part, to serve Northern Clearing. First, pursuant to the Agreement, Stephens's truck was required to be at the Farmington yard at the start of the workday. Second, if he drove the truck home from the right-of-way site, then he would have to drive the truck to the mandatory check-in at the Farmington yard the next morning, as he was doing on the day of the crash. Third, Stephens was driving his truck not only to get himself to work but also, at least in part, because he was required to bring the truck—with the attached crane

that was critical to Northern Clearing's work—to the Farmington yard, where he would typically refuel it.  Simply put, a reasonable jury might conclude that Stephens's conduct at the time of the crash was actuated, at least in part, to serve a purpose to Northern Clearing.

Further, a reasonable jury might find that the nature of Stephens's travel— first to the assembly point and then to the job-site—differs from other commuters or tradespeople who routinely transport tools in a personal vehicle.  *See Lowe*, 2016 WL 6514139, at * 3 ("Almost every employee presumably carries some tools of a trade, a uniform, or some other item supplied by his or her employer and related to work while driving to or from work.  That [the employee] may have transported a hard hat provided by [his employer] in his personal vehicle is not sufficient to 'tip the balance to bring [his] conduct with the scope of employment.'" (third alteration in original) (quoting *Merlonghi v. United States*, 620 F.3d 50, 56 (1st Cir. 2010))).  Specifically, the fact that Stephens's truck was a commercial box truck with an attached crane, for which he was required to maintain an active Commercial Driver's License, could lead a reasonable jury to infer that Stephens was doing more than merely using a personal vehicle to get to work.

Drawing all reasonable inferences in favor of the nonmoving party, Rollins-Allen has identified specific trial-worthy issues as to whether Stephens was acting in the scope of his employment under the *Spencer* criteria.  Thus, Northern Clearing is not entitled to judgment as a matter of law at this stage and summary judgment must be denied.

### 2.  Whether Stephens was acting in the scope of his employment under the Third Restatement

Even if *Spencer* is treated as having been implicitly overruled by the Law Court and this case is governed by the Third Restatement, as Northern Clearing contends, a reasonable jury could find that Stephens was acting within the scope of his employment at the time of the crash.

The Third Restatement provides that:

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control.  An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

Restatement (Third) of Agency § 7.07(2) (Am. L. Inst. 2006).  The Restatement commentary states that "[a]n employee's conduct is within the scope of employment when it constitutes performance of work assigned to the employee by the employer." *Id.* at § 7.07 cmt. c.  It further provides that "[i]f an employee undertakes a course of work-related conduct for the sole purpose of furthering the employee's interests . . . the employee's conduct will often lie beyond the employer's effective control."  *Id.* at cmt. b.  "An independent course of conduct represents a departure from, not an escalation of, conduct involved in performing assigned work or other conduct that an employer permits or controls."  *Id.*

The commentary to the Third Restatement provides useful guidance as to how these principles differ from their previous iteration, most notably in the exclusion of the "time and space limits" criteria, and it clarifies that conduct outside the scope of

16

employment "occurs within an independent course of conduct intended to serve *no purpose* of the employer."  *Id.*; *see also Picher*, 2009 ME 67, ¶ 32 n.5 ("Comment b to section 7.07 explains the changes in the formulation of the scope-of-employment doctrine between [the Third Restatement] and its predecessors . . . including that section 7.07(2) is stated in more general terms and takes into account changes in workplace practices.").

### (a)   Applying the Third Restatement principles

Here, there is a trial-worthy issue as to whether Stephens was "performing work assigned by [his] employer or engaging in a course of conduct subject to [his] employer's control."  Restatement (Third) of Agency § 7.07(2) (Am. L. Inst. 2006).  A reasonable jury might conclude that Stephens was performing work assigned by Northern Clearing because he was driving a truck—which he was required to have as a condition of his employment and required to transport to the Farmington yard every morning—for a mandatory check-in.

A reasonable jury might also find that Stephens's conduct was subject to Northern Clearing's control at the time of the crash.  Stephens was required, pursuant to the Agreement, to hold a Commercial Driver's License and comply with all legal requirements accompanying the transport of a large, commercial box truck. On the other hand, a jury could also find that Stephens was not being paid an hourly wage or rig rental fee at the time of the crash, and he had not clocked-in to begin his workday.  Nonetheless, at this stage, I must draw all reasonable inferences in the nonmoving party's favor, and a trial-worthy issue remains as to this factor.

17

It is also reasonable to infer that Stephens was not engaged in "an independent course of conduct not intended . . . to serve any purpose" to Northern Clearing. *Id.* Stephens's truck was critical for Northern Clearing's work at the right-of-way, and specifically, the crane and equipment that he transported were vital for the services that he performed on Northern Clearing's behalf. Although Northern Clearing was paying a rental fee for the use of Stephens's truck and was "not getting free use of a vehicle," as Northern Clearing argues, ECF No. 41 at 7, a reasonable jury could find that Northern Clearing derived benefits from Stephens owning, inspecting, maintaining, and transporting his truck so that Northern Clearing did not have to purchase and maintain its own service rigs or provide fuel on-location at the job-site.

Further, Stephens was required to ensure that the truck was fueled, and Northern Clearing provided fuel at the Farmington yard. Although Stephens had a fuel card to pay for gas elsewhere, a reasonable jury could find that Stephens was driving the truck to the yard to refuel for the day, therefore at least in part serving a purpose to serve his employer, Northern Clearing. A reasonable jury might thus conclude that Stephens was not driving the truck for the sole purpose of furthering his personal interests or might find that he was engaged in a course of conduct that served at least some purpose to Northern Clearing.

**(b)   The "going and coming rule" under the Third Restatement**

The Third Restatement also contemplates the "going and coming" rule:

> In general, travel required to perform work, such as travel from an
> employer's office to a job site or from one job site to another, is within
> the scope of an employee's employment while traveling to and from
> work is not. However, an employer may place an employee's travel

> to and from work within the scope of employment by providing the employee with a vehicle and asserting control over how the employee uses the vehicle so that the employee may more readily respond to the needs of the employer's enterprise.  An employee's travel to and from work may also be within the scope of employment if the employee does more than simply travel to and from work, for example by stopping for the employer's benefit to accomplish a task assigned by the employer.

Restatement (Third) of Agency § 7.07 cmt. e (Am. L. Inst. 2006); *see also Spencer*, 2006 ME 120, 910 A.2d 366 (Saufley, C.J., dissenting).[5]  Northern Clearing argues that Stephens's "purpose was no different than that of other commuters:  he needed to get himself and the tools of his trade to his place of employment."  ECF No. 36 at 5.

Assuming that the Law Court, which has applied the Second and Third Restatements in vicarious liability decisions, would also recognize the principles governing the going and coming rule set forth in each of these iterations, there remains a trial-worthy issue under the going and coming rule as well.

A reasonable jury could find that, similar to an employer who provides a vehicle that an employee must drive as a condition of the job, Northern Clearing required Stephens to use his truck to fulfill his role as an operator mechanic and perform work for Northern Clearing.  And as discussed previously, a reasonable jury

---

[5] The *Spencer* dissenting opinion recognized the general principle that "a person who is going to or coming from work is responsible for his or her own actions."  *Spencer*, 2006 ME 120, ¶ 11, 910 A.2d 366 (Saufley, C.J., dissenting).  The dissent also noted a limited number of exceptions to the going and coming rule that are generally recognized by other courts, *id.* at ¶¶ 16-17, and that "[e]xceptions to the going and coming rule should be recognized only in cases where some unique aspect of the employee's travel is within the control of, or for the benefit of, the employer," *id.* at ¶ 21.  Because Maine has not expressly adopted exceptions to the going and coming rule in the context of tort liability—and the *Spencer* dissent is not controlling authority—I do not address at length the specific exceptions discussed in it.

could find that Northern Clearing exercised sufficient control over Stephens's use of the truck because of the contractual requirements imposed on him to maintain the truck and hold a Commercial Driver's License.  Accordingly, there is a trial-worthy issue as to whether transporting a truck affixed with a crane that was a required condition of Stephens's employment constituted "more than simply travel to and from work."  Restatement (Third) of Agency § 7.07 cmt. e (Am. L. Inst. 2006).

Northern Clearing emphasizes that out-of-state authority involving vicarious liability in the context of rig rental agreements is instructive as to whether exceptions to the going and coming rule apply.  For example, the district court in *Koerner v. Hankins*, No. 2:11-cv-492, 2012 WL 266463, at *5 (W.D. Pa. Jan. 30, 2012) concluded that an employee, driving his personal truck pursuant to a rig rental agreement, was not acting within the scope of his employment at the time of an accident.  In *Koerner*, the language of the rig rental agreement was a significant factor in the court's decision to reject the argument that transporting the truck to and from the job-site everyday served at least a dual purpose to the employer.  *Id.*  That agreement stated: "Lessor will make the Rig available as part of Lessor's obligations per the Rig Rental Agreement, and not as part of the Lessor's duties for [the employer] as an employee."  *Id.*  The district court noted that this provision "appear[ed] to have been specifically designed to shield [the employer] from respondeat superior liability while its welders were in transit to and from the work site."  *Id.*

No such provision exists here.  Not only does the Agreement between Northern Clearing and Stephens refer to the truck's owner as the "Employee," *see* ECF No. 36-

4 at 1, the Agreement does not specify that the truck's owner is not making the truck available in his or her capacity as an employee.  The truck at issue in *Koerner* was also significantly different from Stephens's:  the employee in *Koerner* used a welding rig in the bed of a pickup truck.  *Koerner*, 2012 WL 266463, at *2.  Here, Stephens's truck was a 30,000-pound box truck equipped with a crane.  Unlike the facts here, there is also no indication that the employee in *Koerner* was required to hold a Commercial Driver's License as a condition of employment.

Accordingly, the Agreement between Stephens and Northern Clearing does not bar a factfinder from reasonably inferring that Stephens, as an employee, was required to transport the truck to the Farmington yard for the start of each workday, and that the transport of the crane and equipment mounted to the truck was meaningfully different from an ordinary commuter's travel to-and-from work.  Thus, under the principles set forth in the Third Restatement, there is a trial-worthy issue as to whether Stephens was acting in the scope of his employment at the time of the crash, and whether the going and coming rule applies to the factual circumstances presented.

### III.  CONCLUSION

Both under the criteria set forth in *Spencer* and the principles of the Third Restatement, there are undisputed and disputed facts that could support a verdict in favor of Rollins-Allen, and thus, Northern Clearing has not shown that it is entitled to summary judgment.  Accordingly, it is hereby **ORDERED** that Northern Clearing's Motion for Summary Judgment (ECF No. 36) is **DENIED.**

**SO ORDERED.**

**Dated:  September 21, 2023**

_/s/ Jon D. Levy_
**CHIEF U.S. DISTRICT JUDGE**
